UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HANNIBAL A-E.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. C20-1447-BAT

**ORDER REVERSING THE COMMISSIONER'S FINAL DECISION AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff appeals the ALJ's decision finding him not disabled. The ALJ found bipolar disorder with psychotic features, substance abuse, and tendonitis, bilateral knees are severe impairments; Plaintiff has the residual functional capacity (RFC) to perform light work with additional limitations; and Plaintiff cannot perform past relevant work but is not disabled because he can perform other jobs in the national economy. Tr. 12-27.

Plaintiff contends the ALJ misevaluated three medical opinions regarding his mental impairments and the Court should accordingly remand the case for further administrative proceedings. Dkt. 13. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

# DISCUSSION

The Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).

**A.      Medical Opinions**

Plaintiff filed his disability claim in 2018. The regulations effective March 27, 2017, 20 C.F.R. §§ 404.1520c(c), 416.920c(c), require the ALJ to articulate the persuasiveness of each medical opinion and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b). The ALJ must specifically account for the factors of supportability and consistency in addressing the persuasiveness of a medical opinion. Thus, the regulations require the ALJ to provide specific and legitimate reasons in giving weight to or in rejecting a doctor's opinions. *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the *Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

Additionally, the ALJ's analysis must be supported by substantial evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5852 (January 18, 2017) ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision … [T]hese courts, in reviewing final agency

decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential standard to us.").

Plaintiff challenges the ALJ's determinations regarding the opinions of three doctors which are discussed in turn.

### 1. David Widlan, Ph.D.

Dr. Widlan examined Plaintiff in May 2018 and opined "[Plaintiff] suffers from Schizophrenia. The Mental Status Examination indicated adequate or moderate deficits in memory and concentration, with some deficits in social reasoning. He is cognitively able to accept simple instruction from a supervisor. Moderately complex tasks would likely cause him to derail. Regardless, he does not appear capable of persistence as he would become easily overwhelmed by basic social stressors due to paranoia." Tr. 25. While finding "part of this medical opinion evidence persuasive," the ALJ found "less persuasive the portion of Dr. Widlan's opinion that the claimant is incapable of persistence." *Id*.

The ALJ discounted Dr. Widlan's opinion as inconsistent with "as discussed above, the claimant's record – including his counseling record from October 2018 through May 2019 and his work toward attending law school – [that] suggest[s] that the claimant retained significant capacity to persist in tasks despite ongoing life stressors and difficult circumstances." Tr. 25. In support, the ALJ cited to opinion of Dr. Leslie Postovoit (B5A/3) and to portions of the medical record. *Id.* Dr. Postovoit noted Plaintiff has schizophrenia spectrum disorder, a history of hearing voices, is homeless, has panic attacks, is at times paranoid, socially isolates at times, and has deficits in judgment. She noted, for instance, Plaintiff tried to buy a Mercedes in 2018 despite being unemployed and homeless. Tr. 90-91. Although the doctor stated Plaintiff "definitely has some unusual thoughts and experiences, she opined he could perform gainful work activity. Tr.

92. She rendered this opinion despite noting Plaintiff is moderately limited in his ability to interact with others, concentrate, persist and maintain pace and adapt or manage himself, Tr. 91; is moderately limited in his ability to carry out detailed instructions, maintain attention for extended periods, perform activities with a schedule including maintain attendance and punctuality, and complete a normal workday without interruptions and perform at a consistent pace. Tr. 92-93. The ALJ acknowledged Dr. Postovoit's two-part narrative explanation for her opinion: "Claimant will experience intermittent interruptions from psychological symptoms. Claimant is capable of remaining on task enough of the time in order to complete work assignments within an acceptable time frame." Tr. 24 (citing Tr. 93).

In many respects the opinions of Drs. Widlan and Postovoit are similar. Both recognize Plaintiff has severe mental illness, including hearing voices and paranoia. Both assessed Plaintiff as having a number of moderate functional limitations. The difference is the conclusions each doctor reached. Dr. Widlan opined Plaintiff's mental illness limited Plaintiff more than assessed by the ALJ. Dr. Postovoit on the other hand opined Plaintiff can work because he performed some work in the past despite his symptoms.

The ALJ found Dr. Postovoit's opinion should be given more weight and contradicts Dr. Widlan's opinion but failed to explain sufficiently why Dr. Postovoit's opinion is more supportable or consistent with the record. The ALJ found Plaintiff has not engaged in work activity since the onset date in 2018 and thus Plaintiff's past jobs are not grounds, as Dr. Postovoit found, to discount the severity of Plaintiff's mental health symptoms. Dr. Postovoit also noted Plaintiff's many moderate functional limitations but provides no explanation as to how or why Plaintiff can engage in substantial gainful work activity despite these limitations.

Dr. Postovoit's narrative explanation for her opinion contains two separate limitations. The first —"Claimant will experience intermittent interruptions form psychological symptoms"—is inconsistent with Dr. Postovit's conclusion Plaintiff can perform gainful work. Further, the ALJ's RFC determination does not account for how Plaintiff **will** experience intermittent interruptions or provide a reasoned basis to reject the limitation. Additionally, the ALJ does not explain how the RFC accounts for the numerous moderate functional limitations Dr. Postovoit noted and instead the RFC determination indicates Plaintiff can cope with changes in work setting and can meet work expectations regarding attendance, production, work place behavior, focus and pace for two hour increments. The ALJ did not explicate the basis for this conclusion, and Dr. Postovoit did not venture the same opinion.

The Court also notes the vocational expert (VE) was not presented with a hypothetical question that included a limitation that Plaintiff can cope with changes in work setting and can meet expectations regarding attendance, production, work place behavior, focus and pace **for two hour increments** as set forth in the RFC. Thus, the VE testified that Plaintiff can perform certain jobs without taking into account all of the limitations contained in the RFC; the ALJ's step five determination is thus erroneous for this separate reason.

In addition to citing to Dr. Postovoit's opinion, the ALJ also cited to portions of the medical record the ALJ deemed contradicted Dr. Widlan's opinion. The ALJ cited to B2F/4 which does not contain any information contradicting Dr. Widlan's opinion. The exhibit is part of a medical record noting Plaintiff is paranoid and has delusions, suffers from night-terrors, and seemed stable on February 22, 2108, which is before his onset date. The ALJ also cited to B3F4-5 which is Dr. Widlan's report, and thus not grounds to reject the same opinion. The ALJ further citied to  B5F/6, 14-15,24-27, 29, and 45 which covers mental health treatment between October

2018 and May 2019. This series of records notes when Plaintiff was seen in October 2018 and April 2019, "Psychotic features including auditory hallucinations, delusions, and paranoid ideation were present during evaluation and past encounters." Tr. 322 and 324. Exhibit B5F/6 is a report recording Plaintiff's complaints about being fired, his plan to relocate to Saudi Arabia, and how he has auditory hallucinations and problems concentrating. Tr. 326. Exhibit B5/F14 is the beginning of a clinical summary that does not contain medical evidence contradicting Dr. Widlan's opinions and F15 indicates Plaintiff shows resilience in getting a BA and seeking admission to law school, but is Bipolar and meets criteria for engaging "in activities that have a high potential for painful consequences that cause clinically significant impairment in functioning," and that Plaintiff has "psychotic features including auditory hallucinations, delusions, and paranoid ideation [that] were present during evaluation and past encounters." Tr. 335. This series of records tends to support rather than contradict Dr. Widlan's opinions.

Turning to B5F/24-27, 29, and 45, the records at 24-27 relate to the October 2018 evaluation noted above in which auditory hallucinations, delusions, and paranoid ideation were present during evaluation. Page 24 indicates Plaintiff was cooperative though the evaluator noted he "required multiple instances of redirection," and had paranoid ideation. Tr. 344. Plaintiff was noted to have limited insight into the current status of his mental health, was anxious, had normal memory and concentration; Plaintiff indicated to the evaluator difficulty with concentration due to psychotic symptoms. Tr. 345. Page 27 summarizes the October 2018 intake, noting Plaintiff had delusions and paranoia, and talks nonstop expressing perplexity about his various challenges. Tr. 347. And lastly P. 45 is a report from May 2019 noting Plaintiff wants to go to law school, restore his rights to possess a gun and presented with calm behavior and normal speech and pleasant mood. Tr. 365.

Finally, the ALJ cited to records at B6F/4-5 and B7F/1, 3, and 5. *See* Tr. 25. The records at B6F appear to be emergency room records from March 2019 regarding Plaintiff's lower extremity and back problems. *See* Tr. 376. Page 4 and 5 do not address Plaintiff's mental health problems and do not contradict Dr. Widlan's opinions. The records at B7F/1, 3, and 5 likewise address Plaintiff's physical problems (knee and ankle pain) and thus do not contradict Dr. Widlan's opinions about Plaintiff's mental limitations.

In short, the ALJ erred in rejecting Dr. Widlan's opinions as inconsistent with Dr. Postovoit's opinion and with the medical record. Dr. Postovoit's opinion contains many of the same findings that Dr. Widlan made but the ALJ failed to provide any explanation for how or why those limitations result in the RFC that was assessed. To reject Dr. Widlan's opinion in favor of Dr. Postovoit's opinion required the ALJ to provide specific and legitimate reasons showing why Dr. Postovoit's opinion was more supportable and consistent with the record than Dr. Widland's. The ALJ failed to do so in this regard.

The ALJ's reliance on the medical record to reject Dr. Whidlan's opinion is also unsupported. The ALJ correctly noted that at least on one day, Plaintiff appeared to calm with normal mood and behavior. But that occurrence is not representative of Plaintiff's record of long standing and serious mental health problems and symptoms which tends to support Dr. Whidlan's opinions. Additionally, the ALJ discounted Dr. Widlan's opinions because of Plaintiff's "work toward attending law school." Tr. 25. The record, however, does not support the conclusion that that "work" shows Plaintiff is more functional than Dr. Widlan assessed. While Plaintiff may aspire to attend law school there is nothing showing he engaged in the type of work indicative of higher functioning. Plaintiff's aspiration to attend law school is more akin to his expressed desire to move to Saudi Arabia, and his attempt to buy a Mercedes despite being

homeless and lacking gainful employment sufficient to afford the car. His aspirations or desires thus do not necessarily track with the reality of his mental condition and are ill-suited to measure his functionality.

The ALJ's error was harmful because it resulted in a RFC determination that failed to account for all assessed limitations. Further as noted above, the VE was given a hypothetical question that not only did not contain all assessed limitations but also failed to contain a limitation set forth in the RFC. The ALJ's step finding, which relied upon the VE's testimony, is thus erroneous.

### 2. Leslie Postovoit, Ph.D. and Bruce Eather, Ph.D.

Dr. Postovoit reviewed Plaintiff's records and opined Plaintiff "will experience intermittent interruptions from psychological symptoms," "is capable of remaining on task enough of the time in order to complete work assignments within an acceptable time frame," "cannot work in direct service to the general public or in close/constant contact with coworkers due to ongoing paranoia," and "needs to work in an environment where his job duties are clearly outlined, but he is capable of making adjustments." Tr. 24. Dr. Eather, in affirming Dr. Irwin, reached the same conclusion. *Id*. The ALJ found these opinions "persuasive." *Id*.

The ALJ credited these opinions as "generally consistent with the claimant's longitudinal medical record, discussed above, suggesting that the constellation of his mental impairments resulted in a moderate – but not extreme – reduction in his cognitive, adaptive, and social functioning capacity." Tr. 24-25. While the ALJ may accept a reviewing doctor's opinion under the new regulations in fashioning the RFC, the ALJ must specifically account for the factors of supportability and consistency in addressing the persuasiveness of the opinion and explain how the opinion supports the RFC determination. As discussed above, the ALJ erred by failing to

explain how the numerous moderate limitations Dr. Postovoit assessed is consistent with the RFC determination in this case, or why Dr. Postovoit's opinions are in fact supportable. Further, to the extent the ALJ offered, without elaboration, citations to the record, the ALJ "cannot simply pick out a few isolated instances" of medical health that support her conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). As noted above, the ALJ relied upon portions of the record that do not contradict Dr. Widlan's opinion that Plaintiff is more limited than the ALJ assessed. Hence the ALJ's finding Dr. Postovoit's opinion is supported by the longitudinal record fails.

In sum, the regulations applicable to this case require the ALJ to articulate the persuasiveness of each medical opinion and to explain how the ALJ considered the supportability and consistency factors in weighing the opinions. The ALJ failed to validly and specifically account for the legitimate factors of supportability and consistency and thus erred in giving more weight to Drs. Postovoit and Eather's opinions, and then using their opinions to discount Dr. Whidlan's opinions. Additionally, the ALJ must not only weigh the medical evidence but must also explain how the RFC determination accurately includes the limitations assessed. The ALJ failed to explain how the RFC determination accounts for the many moderate limitations Dr. Postovoit noted in her opinion and her assessment that Plaintiff "will experience intermittent interruptions form psychological symptoms." The ALJ must accordingly on remand reassess the doctor's findings and make appropriate findings as noted above.

And finally, the VE was asked to provide an opinion about jobs Plaintiff could perform based upon a hypothetical question that did not include all limitations set forth in the RFC

ORDER REVERSING THE COMMISSIONER'S FINAL DECISION
AND REMANDING FOR FURTHER PROCEEDINGS - 9

determination. The ALJ thus erred at step-five in relying on the VE's testimony in concluding there are jobs that Plaintiff can perform in the national economy.

## CONCLUSION

For the foregoing reasons, The Court **REVERSES** Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reevaluate the opinions of Drs. Widlan, Postovoit and Eather, develop the record and redetermine the RFC as needed, and continue to the remaining steps as appropriate.

DATED this 19th day of May 2021.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge